UNITED STATES, Appellee

v.

ROBERT ALEXANDER, JR., Private First Class,
U. S. Army, Appellant

3 USCMA 346, 12 CMR 102

No. 2334

Decided September 11, 1953

■

LT COL Edgar R. Minnich, U. S. Army, and 1ST LT Wade J. Dahood, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, 1ST LT Kenneth A. Howard, U. S. Army, and 1ST LT Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with and found guilty of three specifications alleging violations of Article 134, Uniform Code of Military Justice, 50 USC § 728, and one specification charging the wrongful appropriation of a Government vehicle, in violation of Article 121 of the Code, 50 USC § 715. The three specifications under the general Article alleged the following offenses: That accused wrongfully and unlawfully accepted the sum of $10.00 from another named soldier to remove a Korean female from the tent in which the other named soldier was quartered; that he wrongfully transported a Korean female in a Government vehicle; and that he wrongfully and unlawfully accepted the sum of $30.00 from another named soldier to transport a Korean female in a Government vehicle. The court-martial sentenced him to a dishonorable discharge, total forfeitures, and confinement for eight years and four months. Reviewing authorities dismissed two of the three specifications based on violations of Article 134, *supra,* and reduced the confinement to five years. We granted the accused's petition for review to determine whether the remaining specification under Article 134 states an offense; whether the instructions were sufficient; and whether the accused was properly sentenced. The findings of guilty of wrongful appropriation are not questioned here and they stand affirmed.

The evidence discloses that on June 1, 1952, a Private Williams contacted the accused and requested that he (accused) transport a reported Korean prostitute to Wonju, Korea. Accused replied that he was not driving in that direction as he was going to Chunkon.

He, however, further replied that if Williams would pay him he would alter his plans and drive the woman to Wonju. Williams stated he only had $30.00 but he would be willing to pay that price. That was sufficient inducement for the accused who agreed to transport the prospective passenger for that amount. The accused was a driver for the 549th Quartermaster Laundry Company and he made the journey possible by taking a 2½ ton 6 x 6 Army truck from an Eighth Army Service Center motor pool which controlled his unit's transportation. The vehicles were to leave the Service Center only if the driver had a properly authorized trip ticket. For this particular trip, the accused did not obtain a ticket, and he was in no way authorized to use the truck. After accepting the money, the accused had some clothing loaded on the truck so he could secrete the woman. With Williams, some other soldiers, and the woman, as passengers, accused left the motor pool and drove on toward Wonju. The truck was stopped by military authorities about six miles from the Service Center and all parties were arrested and taken into custody.

The specification on which the accused was found guilty states:

"In that Private First Class Robert Alexander Jr. . . . being at that time the driver of a government vehicle, did, . . . . on or about 1 June 1952, wrongfully and unlawfully accept from Private First Class Anderson Williams, . . . the sum of thirty dollars ($30.00) to transport a Korean female in a government vehicle."

The first question which is presented on this appeal is whether the foregoing

**347**

specification alleges an offense. Accused argues as if bribery ▆▆▆▆ ▆ was the sole offense in issue. We may say at the outset that offense is not alleged. Government counsel have conceded that point, and obviously the concession has merit, for nowhere in the specification is there an allegation that the money was given with the intent to influence official action, which is a necessary element of bribery. Notwithstanding the specification's deficiency in that regard, we think a disorder is alleged. It should require little argument to establish that an assigned truck driver is not authorized to request and accept money for transporting passengers in a Government vehicle, be they authorized or unauthorized. That is using Government property for private gain and it is contrary to law, regulations, and customs of the service. It is contended, however, that the offense of misappropriation covers the entire wrongdoing. It seems reasonably certain that if a driver was in rightful possession of a Government vehicle he would be guilty of a disorder for improperly levying charges against passengers and we fail to see how the fact that he wrongfully appropriated the vehicle to his own use would change the act from one of disorder to one of order. While the accused in this instance was a wrongdoer in taking the vehicle, he held himself out as having the right to drive the truck and he told Williams he had a dispatch ticket. He was familiar with the requirements that vehicles should not be taken from the motor pool without a clearance and then only on official business. He breached those requirements and his sole reason for so doing was to acquire a little ready cash. That he knew he was engaged in an additional dishonest transaction in hauling the woman is shown by his loading of a considerable quantity of Government clothing on the truck so she could be hidden and thereby escape detection. We suspect that if that practice were indulged in to any great extent, order and discipline in the military service would be nonextant. We, therefore, conclude the specification states an offense under Article 134, *supra.*

The law officer instructed the court on the elements of the offense as follows:

"First, that at the time and place alleged, namely, APO 301, on or about 1 June 1952, the accused was present at APO 301, along with Private First Class Anderson Williams, and that he was the driver of the Government vehicle.

"Second, you must find that the accused wrongfully and unlawfully received the sum of thirty dollars from Private First Class Anderson Williams.

"You must find, thirdly, that the accused received the said sum of thirty dollars as compensation for transporting a Korean female in a Government vehicle, and

"Fourth, that under these circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces."

Accused levels most of his argument against the instruction because it does not state all the elements ▆▆▆▆ ▆ of bribery. Having concluded that that offense was never placed in issue by the pleadings, we must test this instruction by the standards of a disorder. Any irregular or improper act on the part of a member of the armed services which directly and substantially affects adversely the discipline or good order of the service may be made the subject of a charge. We, therefore, look to those acts enumerated in the instruction to determine if they are wrongful and if they would have any appreciable and adverse impact on order or discipline. We have no doubt that they do. Stated from the standpoint of the instructional requirements, if a court-martial can find beyond a reasonable doubt that a driver of a Government vehicle wrongfully and unlawfully accepted $30.00 from another member of the armed services to violate a well-known regulation prohibiting the use of Government property for private gain and he does in fact misuse the property, then it can find beyond a reasonable doubt that such

**348**

acts are in violation of Article 134, *supra*.

Turning next to the question of the sentence, the law officer used the maximum sentence for the crime of bribery when he instructed the court on the maximum sentence imposable for all offenses involved. He erred in that he used an uncharged and unsupported offense; but if the error was not prejudicial, the sentence should not be reduced. There are only two possible crimes with which we need concern ourselves. The first is a simple disorder and the second is graft. We find the crime of graft listed under Article 134 in the Table of Maximum Punishments and it is linked with bribery. However, the elements of that offense are not set out in the Code or the Manual so we must look to civilian authorities for assistance. Black's Law Dictionary defines graft in the following language:

"Advantage or personal gain received because of peculiar position or superior influence of one holding position of trust and confidence without rendering compensatory services, or dishonest transaction in relation to public or official acts, and sometime implies theft, corruption, dishonesty, fraud, or swindle, and always want of integrity."

When the punishment for an offense is listed in the Table of Maximum Punishments, that prescribed is controlling. When it is not, the punishment for a closely related offense may be used. Paragraph 127c, Manual for Courts-Martial, United States, 1951, so states. It provides:

"The punishment stated opposite each offense listed in the Table of Maximum Punishments is hereby prescribed as the maximum punishment for that offense, and for any lesser included offense if the latter is not listed, and for any offense closely related to either if not listed. If an offense not listed in the table is included in an offense which is listed and is also closely related to some other listed offense, the lesser punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment."

In this instance, both graft and disorderly conduct are listed. To determine the appropriate sentence in this case, we must apply the Manual rule, if possible; and if the offense found is graft or closely related thereto, then the three years' limit is applicable. On the contrary, if the facts do not reach the level of graft but merely show a simple disorder, then four months is the maximum period of confinement. Practically every offense of a serious nature amounts to a disorder, so the only practical approach to this problem is to determine first whether this is the more serious of the two offenses. A comparison of the crime of graft as defined above and the one committed here shows a marked similarity. In the instant case, the following facts show the accused obtained personal gain without rendering compensatory service, because of the peculiar position occupied by him; the accused used Government property for his own pecuniary betterment; he had apparent authority to drive the vehicle; he clothed himself with the cloak of officiality by representing that he had a trip ticket to use the truck; he requested the payment of money knowing he would be using Government property unlawfully; and he accepted payment under circumstances showing a criminal intent. Clearly, he committed an offense which far exceeds a simple disorder and we are convinced it should be equated to graft. The instances of disorders recited in the Manual involve minor offenses, while the one here in issue has a greater degree of gravity than those listed. It makes little difference that the accused was a wrongdoer in another respect and that he is punished separately for that. Assume he had been charged only with this offense, the mere fact that his possession of the vehicle at the particular moment was unlawful would not lessen his culpability. Whether rightfully or wrongfully in possession of the vehicle, he corruptly enriched himself by using a vehicle belonging to the Government. If that is not graft, then it is so similar that the offense designated in the Table of

**349**

Maximum Punishments by that name should control the punishment. This was not the offense used by the law officer but it carries the same maximum punishment as does bribery, so his error did not prejudice the accused.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I concur in the majority opinion generally, but I dissent from that part which holds that the sentence is legal.

All of us agree that the law officer improperly considered the offense of transporting the girl in the misappropriated Government vehicle as bribery, and, therefore, his instruction on the applicable punishment was erroneous. However, we disagree on the proper limit of punishment for that offense. The majority find a "marked similarity" between the offense charged and graft. Since the maximum punishment for graft is the same as that for bribery, they conclude that the accused was not harmed by the erroneous instruction. In my opinion, the offense cannot reasonably be equated to graft, and, consequently, I regard the error as prejudicial and the sentence as illegal.

The gravamen of graft is the extraction of private gain from another while holding a peculiar position of superiority, influence, or trust (State v. Sheridan, 14 Idaho 222, 93 P 656 (1908)), or a dishonest transaction in relation to public or official acts (Black's Law Dictionary, page 827). The Government sought to support the analogy of the instant offense to graft on the ground that the accused was in a superior position to the person from whom he exacted payment for the transportation of the female. In its brief, it said (pages 6–7):

"... Furthermore, if the facts of the instant case are applied to the elements of the offense of graft, the similarity of appellant's act to graft becomes painfully clear. The gravamen of that offense is the unlawful advantage that appellant exacted from Williams by reason of his position of superiority over Williams (Razete v. United States, *supra*). Stated in the light of the facts, appellant was in possession of a government vehicle. Williams and his associates had a Korean prostitute and a large quantity of army clothing which they desired transported to Wonju, Korea. Of necessity the female had to be concealed as well as transported, and this could only be done by using a vehicle. Appellant in the superior position of having such a mode of transportation compelled Williams to pay him (appellant) $30.00 to effectuate Williams' criminal design. Thus, since the United States is interested in the use of its vehicles, appellant's act in accepting $30.00 from Williams is indeed closely related to the offense of graft."

The Government's contention was correctly rejected by the majority. Plainly, the accused did not occupy a peculiar position of superiority, influence, or trust with respect to the person who paid for the transportation. But, by some strange alchemy, the majority has created for the accused a sort of *de facto* status of officiality so as to hold him accountable on the basis of a dishonest transaction in relation to public or official acts. Having conceded a lack of official capacity in the initial use of the vehicle, I cannot understand how the later transportation for pay was in relation to an official act. There was patently no semblance of official action in either the misappropriation of the vehicle or in the subsequent use for hire.

No doubt the accused's conduct amounted to a serious offense. However, that offense was misappropriation of the vehicle. The further improper use in transporting the girl for pay was no more than a simple disorder. Under the circumstances of this case, it is unrealistic and unreasonable to equate that act to graft or something closely related to graft.

Inasmuch as the maximum confinement that may be adjudged for a dis-

order is four months, (Manual for Courts-Martial, United States, 1951, paragraph 127c, page 225), the approved findings of guilty cannot support the present sentence. Accordingly, I would reverse the decision of the board of review and return the record of trial to The Judge Advocate General for proceedings not inconsistent with this opinion.