UNITED STATES, Appellee

v.

MATTHEW M. BEY, Private First Class, U. S. Army, Appellant

4 USCMA 665, 16 CMR 239

No. 4254

Decided August 20, 1954

LT COL James C. Hamilton, U. S. Army, MAJ Edwin Doran, U. S. Army, 1ST LT Justin L. Vigdor, U. S. Army, and 1ST LT Jack W. Tucker, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, 1ST LT Roderick V. Brown, U. S. Army, and 1ST LT William G. Fowler, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

At a rehearing, the accused was convicted of a violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. A board of review affirmed the conviction. We granted the accused's petition for review to consider the sufficiency of the evidence and the legal correctness of the law officer's instructions.

The specification of which the accused was found guilty alleges that, "being at the time Platoon Sergeant . . . [he] did . . . wrongfully and unlawfully receive from Private Richard Nelson, then a trainee-member of . . . [his battery], the sum of $5.00, in recognition of services rendered by him . . . in relation to an official matter in which the United States was and is interested, to wit:

the issuing of a Military Pass to the said Private Richard Nelson."

Private Nelson was a trainee of an armored artillery unit at Fort Leonard Wood, Missouri. On the evening of June 3, 1953, he met three of his friends, Privates Stretch, Wallraven, and Kalb. They were going to Waynesville, a nearby town, and they urged Nelson to accompany them. Nelson had no pass. Stretch said that "he possibly could get one" for him. Nelson knew that Stretch and Wallraven had bought passes. Stretch then went to see the accused, who was their platoon sergeant. On finding the accused in his room, he asked for a pass for Nelson. The accused replied that, "he would see about it." Nothing was said about payment for the pass.

Somewhat later, the four privates met the accused in front of battalion headquarters. He gave Wallraven passes for each of them, and Wallraven, in turn, distributed them to the others. All, including the accused, boarded a bus to the Military Police parking lot, where they picked up Kalb's car, and then proceeded to town.

Wallraven and Stretch testified that when the accused delivered the passes he did not ask for money nor did they give him any. Neither did they hear the accused ask Nelson for money, and at no time did they see any money pass between them. Each admitted, however, that he had on a previous occasion paid a Private Spencer for a pass. On cross-examination Stretch also said that he had talked with the Post Staff Judge Advocate, and that he "wouldn't get anything out of it, they were after the ones that were selling them that knew better."

According to Nelson, not more than three to four minutes after the passes were given to Wallraven, the accused said that "I could give him a couple of dollars now and the other three when I got the change." They walked together toward the parking lot, and Nelson gave the accused "the full five dollars." He "assumed it was for the pass, because there was no other logical reason that it could be for." The accused remarked that "it would be more or less a gift of appreciation." At the start of his training, Nelson had received orientation on the proper procedure for obtaining passes. He also was aware of the fact that if he paid for a pass he was committing an offense for which he could be tried by court-martial.

Nelson admitted that when he had talked with Private Stretch about a pass, and Stretch remarked that he could possibly get one, he did not know how he could. He also admitted that he knew that Stretch and the others had talked to the Staff Judge Advocate but he asserted that he did not know the subject of their conversation. He had, however, discussed the case with trial counsel, and the latter had indicated that he probably would not be tried for his part in the transaction.

Passes for trainees were kept in an unlocked metal container in the desk of the Charge of Quarters. Any cadre man could "pick up" a trainee's pass "under the supervision of the first sergeant." The pass received by Nelson was a normal off-duty pass, and bore a signature which was purportedly that of the Commanding Officer. It was the first received by Nelson. He said that if he "needed a pass" he "probably could have went to my Commanding Officer and got one." Ordinarily, however, the Commanding Officer did not issue passes on week days. In any event, Nelson did not go to the Commanding Officer because he "didn't think . . . [he] needed" a pass.

Before final arguments, the law officer had an unrecorded conference with counsel to go over his instructions. When the court reconvened, defense counsel noted on the record an objection to the instructions on the elements of the offense charged, which both the law officer and trial counsel had described as bribery. Additionally, the law officer denied two different defense requests to instruct on accomplice testimony. However, he elaborated on the standard instructions covering the elements of the offense, the presumption of innocence, the burden of proof and the like, with the following advice on the credibility of witnesses:

"The court is advised that if the guilt of the accused as to the Speci-

fication and Charge depends on the testimony of Privates Richard Nelson, Harold Stretch, and Frank Wallraven, and you can not determine whether their testimony was given under duress or fear of punishment, so that you can not determine beyond a reasonable doubt after considering all the evidence that such testimony is true, then you must find the accused not guilty.

"Further, I would like to instruct the court that the credibility of a witness is his worthiness of belief. The court may ordinarily draw its own conclusions as to the credibility of a witness and attach such weight to his evidence as his credibility may warrant."

Regardless of its description at the trial, it is apparent that the offense alleged is not bribery. The █ specification does not state, █ directly or by necessary implication, that the accused accepted the money with intent to influence his official action. This intent is an essential element of bribery, and the failure to allege it precludes conviction for that offense. United States v. Alexander, 3 USCMA 346, 12 CMR 102. Government appellate counsel have conceded this deficiency in the specification. Nevertheless, they contend that the allegations of the specification are still legally sufficient to state an offense under Article 134, supra. We agree.

The specification in this case is substantially the same as that in United States v. Alexander, supra, in which the accused was charged with wrongful acceptance of money to transport a girl in a Government vehicle. Although divided in opinion as to the maximum legal punishment that could be imposed in that case, the Court was unanimous in holding that the specification was sufficient to state an offense under the Uniform Code. It is plain that a platoon sergeant's acceptance of money from a member of his platoon for his services in obtaining a pass is inimical to good order and discipline. See: United States v. Karl, 3 USCMA 427, 12 CMR 183. Consequently, the specification states an offense. It was mis-

takenly described as bribery; but misdescription alone does not require that we reverse the conviction, if an offense is actually described and the accused was not prejudiced in his defense. See: United States v. Deller, 3 USCMA 409, 12 CMR 165. Nothing in the record even remotely suggests that the accused was in any way embarrassed or hampered in his defense by the misnomer of the offense. On the contrary, it appears clearly that he was fully prepared to defend against the facts alleged, whatever the technical name of the charge.

We proceed then to an examination of the sufficiency of the evidence to support the offense alleged. Nelson's testimony that he gave $5.00 to the accused is not contradicted. True, neither Stretch nor Wallraven saw any money pass, or heard any of the conversation between accused and Nelson, but they walked to the parking lot in front of them. It is, therefore, quite possible that the incident actually occurred, without the others being aware of it.

The remaining question is whether the money was paid "in recognition" of the accused's services in █ procuring Nelson's pass. There is substantial evidence to support an affirmative finding. Unopposed, is Nelson's statement that the accused asked him for "a couple of dollars now and the remainder later as a gift of appreciation." In view of the immediately preceding circumstances, the "appreciation" could only be for the accused's help in obtaining a pass. Nelson knew that Stretch was trying to get a pass for him. It does not appear that he knew that Stretch went to see the accused; but when the accused appeared with a pass, it was certainly reasonable for him to believe that the accused had been instrumental in its procurement. And it was also entirely reasonable for the court to infer, from these circumstances, that the request and the payment were for the accused's efforts in obtaining Nelson's pass. As we have already observed, such conduct on the part of a platoon sergeant is unlawful, and constitutes prejudice to good order and military discipline. See United States v. Lescal-

lett, 64 BR 103; United States v. Standley [ACM 5547] 6 CMR 610.

The second issue on which we granted review consists of two problems. The first is whether Nelson ▮ may properly be regarded as accused's accomplice. If he is, we must then consider the correctness of the law officer's denial of two defense requests to instruct on accomplice testimony.

Although the Government and the accused agree that the offense charged is not bribery, they are apparently satisfied that the legal status of those connected with the transaction in this case may properly be determined by the principles of law which apply to the crime of bribery. The situations are substantially similar in that there is an unlawful acceptance of money for the performance of services by a person occupying an official position in relation to the donor. Bribery requires a specific intent to influence an official act. That intent is not set out in the present specification. However, other essentials of the two offenses are virtually the same. See United States v. Standley, supra. We are persuaded, therefore, that for the limited purpose of determining whether the "giver" here is an accomplice of the "recipient," we may properly look to the cases on bribery for guidance.

The civilian cases are in conflict. The Government relies upon a number of state cases holding that the bribe "giver" is not an accomplice of the "taker." State v. Sweeney, 180 Minn 450, 231 NW 225; State v. Wappenstein, 67 Wash 502, 121 Pac 989. The rationale of this line of authority seems to be that, since the two are punishable under separate statutes, they cannot be regarded as accomplices. On the other hand, the accused emphasizes cases which have specifically rejected this reasoning, and hold that realistically the "giver" and the "taker" are accomplices. Representative of these is Egan v. United States, 287 Fed 958 (CA DC Cir 1923). In that case, the trial judge refused the accused's request for such instruction. Holding

the refusal to be reversible error, the Court of Appeals for the District of Columbia said (page 985):

"Wherever two or more persons engage in the commission of a crime, each will be held guilty to the extent of his participation. This is true, whether they may be prosecuted under the same statute or different statutes. In all such cases, where two or more persons cooperate in the commission of crime, or two or more are essential to the commission of a crime, as in the present case, they are accomplices, and it is error for the court to refuse to charge the jury that the testimony of one against the other, because of its self-incriminating character, must be closely scrutinized and received with great care and caution."

We are not bound by either line of authority. In fact, it is unnecessary to make a deliberate choice between them. Undoubtedly, both groups of authority would regard the giver and the receiver of a bribe as accomplices, if each, by his own act, violated the same statute. That is precisely the situation in the military. All participants in a bribe transaction are chargeable under Article 134 of the Code, supra. See Manual for Courts-Martial, United States, 1951, Appendix 6c, page 489. We hold, therefore, that the giver and the receiver of a bribe are accomplices. Consequently, the evidence establishes Nelson as the accused's accomplice.

We turn now to the requirements for an instruction on accomplice testimony, when that issue is reasonably raised by the evidence. The Manual provides that (page 289, paragraph 153a):

". . . Also a conviction cannot be based upon . . . the uncorroborated testimony of a purported accomplice in any case, if such testimony is self-contradictory, uncertain, or improbable. The uncorroborated testimony of an accomplice, even though apparently credible, is of doubtful integrity and is to be considered with great caution."

As appears from our previous reference to Egan v. United States, supra,

the Court of Appeals for the District of Columbia has held that ■ the denial of a proper request to instruct on accomplice testimony is reversible error. The Court of Appeals for the Eighth Circuit has taken the same position. In Lett v. United States, 15 F2d 686 (1926), the court said (pages 689–690):

> "The request was refused. We think the refusal, under the circumstances of this case, was reversible error, unless the substance was covered by the language of the charge given. . . .

> "Not only was the witness Josephine West herself guilty of an offense, amounting to felony, against this same statute, but by her act of purchase she aided, assisted, and encouraged plaintiff in error in the commission of a crime; she was therefore an accomplice within the definition of that term. Ordinarily the failure of a court to charge that the testimony of an accomplice should be received with great caution is not assignable as error, in the absence of a request to so charge. Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L.R.A. 1917F 502, Ann. Cas. 1917B, 1168; Holmgren v. United States, 217 U.S. 509, 524, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Perez v. United States (C.C.A. 9) 10 F.(2d) 352.

> "But it is the better practice so to instruct in any event, and a refusal to do so, when requested, is error. Caminetti v. United States, Holmgren v. United States, Perez v. United States, and Egan v. United States, supra; Albert v. United States (C. C.A. 6) 281 F. 511. We think the instruction asked was a proper one under the circumstances of this case. Ordinarily the requirement that the jury should be convinced beyond a reasonable doubt that the testimony of an accomplice is true would be objectionable, and would warrant refusal; but in the instant case proof of the sale depended entirely upon the testimony of Josephine West, and unless the jury believed that testimony beyond a reasonable doubt they

could not properly return a verdict of conviction."

However, the Government contends that other Federal cases hold that, while desirable, an instruction on accomplice testimony need not be given, even though requested. Particular reliance is placed on two cases decided by the Court of Appeals for the Second Circuit. United States v. Becker, 62 F2d 1007 (1933); United States v. Block, 88 F2d 618 (1937), cert den 301 US 690, 81 L ed 1347, 57 S Ct 793; and United States v. Pine, 135 F2d 353 (CA5th Cir 1943), cert den 320 US 740, 88 L ed 439, 64 S Ct 40. In the Block case the court said (page 621):

> "The only other question raised on Block's appeal is the failure of the judge to tell the jury that they should look jealously at the testimony of Rubin, as an accomplice. It is common practice so to caution a jury, but it is not necessary even when as here the accused asks that it be done. Caminetti v. United States, 242 U. S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442, L.R.A. 1917F, 502, Ann. Cas. 1917B, 1168; Rachmil v. United States, 288 F. 782, 785 (C.C.A. 2); Wallace v. United States, 243 F. 300, 307 (C. C.A. 7); United States v. Becker (C.C.A.) 62 F.(2d) 1007, 1009."

Appellate defense counsel ably argue that the cases cited by the Government are distinguishable from those relied upon by them. Thus, in United States v. Block, supra, the court specifically noted that the record contained "so complete an admission of guilt that no honest jury could have hesitated to convict"; substantially the same limitation appears in the court's earlier opinion in United States v. Becker, supra. Appellate defense counsel further contend that United States v. Pine, supra, merely holds that the trial judge may properly refuse to give a requested instruction which is not only misleading, but the substance of which has been covered in other instructions.

We do not think it necessary to decide whether the cited cases from the Federal Courts of Appeals are in conflict. Our own cases require the conclusion that, in an appropriate case,

670

the law officer must, when requested, instruct on accomplice testimony. In United States v. Phillips, 3 USCMA 137, 11 CMR 137, we held that under the circumstances of that case, it was prejudicial error for the law officer to refuse to instruct on character evidence when so requested by defense counsel. We there said (page 141):

"The law officer rejected this instruction. He was content to direct the court's attention to the Manual for a discussion of the credibility of witnesses and to give the Manual instruction on reasonable doubt and the weighing of evidence. We know not the particular reason the law officer had for rejecting the request but we have noted great reluctance on the part of those officers to give clarifying and amplifying instructions. We cannot stress too strongly the necessity of giving relevant instructions if they are the subject of a request."

An instruction on accomplice testimony was not only relevant on the facts of this case, but all-important to the accused's defense. Nelson was the only witness to the transaction. Clearly, if his testimony had been disbelieved, the accused would have been acquitted. Here, it was certainly as important to the accused to have the benefit of an instruction on accomplice testimony, as it was to the accused in United States v. Phillips, supra, to have an instruction on the effect of character evidence. If it is prejudicial error to refuse a proper request to instruct in the first instance, it is also prejudicial error in the other. To hold otherwise would destroy the very purpose of the rule on accomplice testimony. As we said in a related connection, "the accused must lose whichever way he turns." United States v. Sandoval, 4 USCMA 61, 68, 15 CMR 61, Judge Brosman's concurring opinion, joined in by Chief Judge Quinn.

Nothing in Caminetti v. United States, 242 US 470, 61 L ed 442, 37 S Ct 192, and Holmgren v. United States, 217 US 509, 54 L ed 861, 30 S Ct 588, relied upon by the Government, compels a different conclusion. In each of those cases the United States Supreme Court sustained only the trial judge's denial of a request which was patently erroneous. In Caminetti, the court said (page 495): "We agree . . . that the requests in the form made should not have been given." Similarly, in Holmgren, supra, the emphasis was on the legal incorrectness of the. requested instruction. The court there said (pages 523–524):

"It may be doubtful whether Werta can be regarded as an accomplice, as the record tends to show that he had no part in procuring the testimony of Holmgren, and in nowise induced him to make the oath which was the basis for the proceedings. Be that as it may, the request did not properly state the law, as it assumed that Werta was an accomplice,—a conclusion which was controverted, and against which the jury might have found in the light of the testimony. It is undoubtedly the better practice for courts to caution juries against too much reliance upon the testimony of accomplices, and to require corroborating testimony before giving credence to them. But no such charge was asked to be presented to the jury by any proper request in the case, and the refusal to grant the one asked for was not error."

Our disposition has been to require a less strict standard than is generally applied in the .Federal criminal cases. See United States v. Short, 4 USCMA 437, 16 CMR 11. However, we need not determine the exact limits of our own or the Federal rule. We hold simply that it is error for a law officer to refuse, in a proper case, a request for an instruction on accomplice testimony, which reasonably puts him "on notice" that the issue is essential to a proper finding. United States v. Phillips, supra, page 143.

The Government contends that the law officer was justified in rejecting both requests because they were conflicting. One of the requests was framed so as to advise the court that Nelson and Stretch were accused's accomplices as a matter of law; the other submitted this question to the court as an issue of fact to be determined by it. See United States v. Holmgren, supra.

We find no conflict. Although the conference on the instructions is unrecorded, we believe that the requests were presented to the law officer as alternatives. Instead of selecting one or the other, in relation to the evidence as he saw it, he rejected both. Unless he adequately covered the substance of the request in his other instructions, there was a clear abuse of the law officer's discretion. United States v. Offley, 3 USCMA 276, 12 CMR 32.

Turning to the instructions given, we find two statements on the credibility of witnesses. The second of these is merely the usual general advice to the court on its power to judge the credibility of all witnesses. This is not an adequate substitute for the requested instruction. United States v. Phillips, supra; Egan v. United States, supra. The first refers to testimony by Nelson, Stretch, and Wallraven that they knew they could be punished for buying passes; and that this circumstance is to be considered by the Court in determining the truthfulness of their testimony. This falls far short, however, of emphasizing the fact that "even though apparently credible," accomplice testimony is of "doubtful integrity and is to be considered with great caution." Manual, supra, paragraph 153a, page 289. The deficiency is fatal. Thus, the instructions, as a whole, do not fairly explain the issue presented by the request. Consequently, denial of the requested instruction was error.

It has been suggested that the error is not prejudicial to the accused because the evidence of guilt is compelling. Regardless of what may be the general rule, we find here sufficient facts from which it appears that a fair risk of harm to the accused resulted from denial of his request to instruct. Nelson was the only witness who implicated the accused. By his own admission, he changed his testimony from that which he gave at the previous trial. At the first trial, he said that he gave the money to the accused when they were at the parking lot. Had he not changed his account of the incident, this testimony would have been at least partially contradicted by that of Wallraven and Stretch. They testified that they did not see the accused talking to Nelson at the lot, and that they saw no money pass between them. At this trial, Nelson testified that he gave the money to the accused en route to the parking lot. We do not say that these circumstances are so suspicious in themselves as to require the court to reject Nelson's testimony as unworthy of belief. We do find, however, that had the court been properly instructed that it should consider his testimony with "great caution," it might reasonably have reached a different verdict. We hold, therefore, that the failure of the law officer to instruct on accomplice testimony, when expressly requested to do so, was prejudicial to the accused.

In reaching this conclusion, we have not overlooked the contention that Nelson's connection with the incident was so innocent that he cannot be regarded as having aided, encouraged, or abetted the commission of the offense. As a matter of fact, every person who pays money in a transaction of this kind is being victimized; but by paying, instead of reporting the demand to the proper authorities, he is certainly aiding in the commission of the offense alleged, that is, the receipt of, not merely the demand for, payment for services performed. In any event, our appraisal of Nelson's testimony indicates that he is not as innocent as represented. At the beginning of his training period, he was instructed on how to apply for a pass. He maintains that he could have had a pass from his commanding officer for the asking, but strangely enough, he did not go to the orderly room to ask for one. Instead, he relied upon the efforts of a fellow-trainee, who had no greater standing in the company than he. Although passes were not normally issued on week days, he apparently thought nothing of his friend's success in obtaining one for him. It is also significant that, when asked for the "gift of appreciation," he did not question the request, but immediately assumed that it was intended as payment for the pass. Having made the assumption, instead of protesting, he was satisfied to pay. In his testimony, he said, "I knew that I did wrong." Un-

der the circumstances, it is unrealistic to contend that he paid the money only to comply with the legal request of a superior noncommissioned officer.

Inasmuch as we propose to order a rehearing, we think it appropriate to comment briefly on the ■ limit of punishment for the offense charged. The accused argues that the maximum sentence is that for a simple disorder. However, we consider the offense a serious one. The acceptance of money by a platoon sergeant from a trainee-member of his platoon for services in procuring a pass is but little different from acceptance of gifts by a Government employee from persons with whom he is transacting official business. See: United States v. Marker, 1 USCMA 393, 3 CMR 127. Essentially, it smacks of graft, and is punishable as such. Manual, supra, paragraph 127c, pages 214, 255. Cf. United States v. Alexander, 3 USCMA 346, 12 CMR 102.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and a rehearing is ordered.

BROSMAN, Judge (concurring):

I concur fully in the principal opinion.

I am sure that its author is correct in concluding that the law officer's denial of the accused's request for an instruction concerning accomplice testimony constituted reversible error—if Nelson was an accomplice. In this connection the Chief Judge has, to some degree, identified bribery with the military offense of graft. As a matter of realism I doubt that this is entirely sound. Far more often in bribery than in graft, it seems to me, will the giver and taker be equally blameworthy. The present is a case in point, for Nelson here was in some ways more nearly a victim than a party to the crime. Thus, I can readily see why the law officer hesitated to tar him with the brush of complicity.

To be sure, cases like Egan v. United States, cited by Judge Quinn, point in a contrary direction—and argue with more than a little force that if two persons are of logical necessity involved in this sort of crime, then each is an accomplice of the other. Looking at the problem realistically, however—and for the reason suggested—I must confess to some hesitation in accepting this broad dictum on its merits.

At the same time I cannot fail to recognize that the definition of the word "accomplice" is not so important within the military justice scene as it may be elsewhere. See Manual, paragraph 153a. However, the breadth of the term's meaning could become a critical consideration in a jurisdiction which unqualifiedly rejects uncorroborated accomplice testimony as a basis for conviction. See Wharton, Criminal Evidence, 11th ed, §§ 728–754. In such a setting there would be real danger that any well-run graft-like project could successfully evade prosecution—as instances of bribery occasionally do.

In view of the lesser importance of the accomplice rule in military law, and for reasons of administration—largely those of simplicity—I am, therefore, willing to attempt no distinction here, and to accept what appears to be a Government concession that the present offense is to be controlled by the rules applicable to bribery. A certain amount of support for this position is found in the fact that in these graft cases the witness occupying Nelson's position is punishable under Article 134 which, although a quite broad provision, is the very one under which the graft-taker must be prosecuted.

LATIMER, Judge (dissenting):

I dissent.

I have no disposition to deny the validity of some of the principles announced by the majority of ■ the Court in this decision but I am in sharp disagreement over the issue as to whether or not the victim is an accomplice. The law officer concluded he was not and I support his conclusion. Whether a person aids, encourages or abets in the commission of a crime is a question of fact and in this instance I hardly picture this victim as being a participant

**673**

in the crime for which the accused stands convicted. He was a trainee with not over thirty days service; this was the first time he had obtained a pass; his friends requested he accompany them on a visit to town and they offered to obtain his clearance; without solicitation or encouragement on his part, a pass was obtained and delivered to him; he had not discussed the matter with the accused; there was no prior unlawful agreement as paying for the pass was not discussed with him; and, certainly up until after the pass was in his possession he in no way influenced any action on the part of the accused. After the pass was delivered to him, he was informed by the accused that he could pay $2.00 then and $3.00 later. That was the first information the boy had that he was expected to pay. In so far as the delict of the accused is concerned, which was clearly an act to the prejudice of good order and discipline proscribed by Article 134 of the Code, the crime was complete without regard to the actual passing of money. Of course, at the time the demand was made the victim could have refused to contribute but I imagine he found himself in a dilemma not unlike the victim of a robbery who hands over his wallet.

The majority of the Court rely in part on Egan v. United States, 287 F 958 (CA DC Cir 1923). That case defines an accomplice in an all-inclusive manner. The definition is found in the following language:

". . . The broader and more comprehensive rule is that any one knowingly and voluntarily co-operating with, aiding, assisting, advising, or encouraging another in the commission of a crime is an accomplice, and this is true, regardless of the degree of his guilt. I Russell's Crimes, 49; Wharton's Criminal Evidence, 440; Rice's Criminal Evidence, § 319, Bishop's Criminal Procedure, § 1159."

Applying that rule to the facts of this case leaves a factual hiatus in the proof. Here the victim did not enter into a prior agreement to pay for a pass; he did not offer to pay for its issuance; he did not aid, assist, advise or encourage the accused to charge him for the pass, and I am certain he would have been pleased not to have been confronted with a demand to pay. Viewing the evidence in a light most favorable to the accused, the most that can be inferred from the evidence is that the victim cooperated. However, his cooperation can hardly be described as voluntary. He was told by his superior noncommissioned officer what to do and he complied. That is not the cooperation which I envisage makes a person a criminal. The effect of this decision is to resurrect the old racket of leading a recruit to believe he is required to pay $2.00 for a pass and after having done so, he is advised not to talk because he, too, is guilty of a crime and may be prosecuted.