UNITED STATES, Appellee

v

KENNETH F. MARSHALL, Specialist Five,
U. S. Army, Appellant

18 USCMA 426, 40 CMR 138

No. 21,708

July 3, 1969

*Captain Thomas R. Maher* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Major Dennis R. Hunt, Captain Carmen P. Belefonte,* and *Captain Stephen Arinson.*

*Captain Salvatore A. Romano* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick, Major Edwin P. Wasinger, Major William A. Pope, II,* and *Captain Stewart P. Davis.*

## Opinion of the Court

QUINN, Chief Judge:

We granted review to consider several assignments of error in regard to the accused's conviction of two violations of the Uniform Code of Military Justice, for which he was sentenced to a dishonorable discharge, forfeiture of all pay and allowances and reduction to Private E-1.[1]

At trial, the specification of Charge I was described as "bribery." Appellate defense counsel contend the description is incorrect, and the specification is legally insufficient because it does not allege that the accused sought to influence official decision or action. In material part, the specification alleges that, in violation of Article 134, Code, supra, 10 USC § 934, the accused unlawfully and wrongfully offered Private First Class Gilbert E. Gendreau, Expiration of Term of Service Clerk of the Division, $50.00 "as compensation for services to be rendered by . . . [him] in relation to an official matter in which the United States was and is interested," namely, the finance records regarding the accused's leave. There is no allegation of a specific intent to influence, improperly, official action.

As developed at common law, and in the absence of statutory change, one of the essential elements of bribery is a corrupt intent to influence official action. United States v Alexander, 3 USCMA 346, 12 CMR 102; 12 Am Jur 2d, Bribery, §§ 6, 23. Different from bribery, but related to it is graft. The difference between the two is that in graft an intent improperly to influence official action need not be alleged or proved. Razete v United States, 199 F2d 44 (CA 6th Cir) (1952), certiorari denied, 344 US 904, 97 L Ed 698, 73 S Ct 284 (1952). The close similarity of the offenses is recognized in the Manual for Courts-Martial, United States, 1951, which utilizes one form of model specification, with alternative allegations for both offenses. Manual, supra, Appendix 6c, Form 127, at page 489. The similarity also appears in colloquial speech where the terms are often used interchangeably. Roget's International Thesaurus, Third Edition, 616.8, at page 405. Persons trained in the law are expected to be technically exact, but looseness of language is not necessarily fatal. As we have pointed out in an earlier case, misdescription of an offense at trial "does not require that we reverse the conviction, if an offense is actually described and the accused was not prejudiced in his de-

---

[1] The board of review mitigated the sentence to bad-conduct discharge, total forfeitures, and reduction.

fense." United States v Bey, 4 USCMA 665, 668, 16 CMR 239.

In United States v Alexander, supra, at page 349, we noted that graft contemplates personal advantage or gain in a dishonest transaction in relation to public acts. See also United States v Irwin, 354 F2d 192 (CA2d Cir) (1965), certiorari denied, 383 US 967, 16 L Ed 2d 308, 86 S Ct 1272 (1966). The specification in this ▇▇▇▇▇ ▇ case conforms to the model specification set out in the Manual, and the averments cover all the essential elements of graft. United States v Wiley, 16 USCMA 449, 37 CMR 69; cf. 18 USC § 201(f). The specification is thus sufficient to state an offense. United States v Bey, supra.

As to the risk of prejudice from the misdescription of the offense, none is disclosed in the record of trial, either as to the findings of guilty or the sentence. Defense counsel elicited testimony intended to indicate that the accused did not have a corrupt intent in seeking Gendreau's assistance. This circumstance is relied upon as proof that defense counsel were misled. From the record of trial it would appear, however, that at least one of the two defense counsel did not fully agree with trial counsel's description of the offense as bribery. He indicated he perceived a "scintilla of graft . . . written into" the specification. Assuming, however, that both defense counsel also believed the offense was bribery, all the record demonstrates is that they worked harder, both in preparation and at trial, to defend the accused. Their efforts manifestly did not disadvantage the accused. As defense counsel argued at the trial, the testimony indicating the absence of a corrupt intent supported the accused's contention that he did not request official action, but

only personal assistance to clarify his records. We note further that the law officer instructed the court members as to all the allegations of the specification, United States v Bey, supra, and that the maximum punishment for graft is the same as that for bribery. Manual for Courts-Martial, supra, Table of Maximum Punishments, paragraph 127c, at page 225.[2] It is apparent that the misdescription of the offense was not prejudicial as to either the findings of guilty or the sentence.

The accused's second assignment of error challenges the legal sufficiency of the allegations of the specification of Charge II. The specification is laid as a violation of Article 80, Code, supra, 10 USC § 880. In pertinent part, it alleges the accused "did . . . fraudulently attempt to procure himself to be separated from the United States Army." The accused contends the specification is legally defective in that it does not allege an overt act.

A charge of attempt includes an intent to commit a particular offense and the commission of an act ▇▇▇▇▇ ▇ not amounting to completion of the offense but constituting more than preparation for its perpetration. United States v Choat, 7 USCMA 187, 21 CMR 313; see also Manual for Courts-Martial, supra, paragraph 159. Civilian courts are divided as to whether the indictment or information must allege both the intent and overt act, or whether these elements are subsumed within the term "attempt." 4 Wharton, Criminal Law and Procedure, § 1793, at page 616 (1957); 41 Am Jur 2d, Indictments and Information, § 158. Some jurisdictions have authorized a short form of pleading in which it need only be alleged the accused did "attempt to commit" the particular crime.

---

[2] The law officer also instructed the court members that Charge I was not separately punishable from Charge II, which carried an authorized confinement for five years. As a result, the maximum confinement for both offenses was given as five years, not eight years which was the aggregate for the two offenses if they were separately punishable. As noted earlier in the text, the court-martial did not include any confinement in the sentence.

Michigan Code of Criminal Procedure, § 44, 40 Michigan Compiled Laws Annotated, § 767.44. In the District of Columbia, a similar short form of pleading has apparently been approved as permissible, even in the absence of express statutory authorization. United States v Fleming, 215 A 2d 839, footnote 5, at page 840 (App DC) (1966). See also Sellers v United States, 131 A2d 300 (Mun Ct App DC) (1957).[3]

Random sampling of reported military cases dealing with attempts indicates that in some the specification alleged an overt act. United States v Julius, 8 USCMA 523, 25 CMR 27; United States v Walker, 20 CMR 931, 933; United States v Cascio, 16 CMR 799, 820. In other cases no overt act was averred, and no note was taken of the absence of the allegation as a possible deficiency in the specification. United States v Dominguez, 7 USCMA 485, 22 CMR 275; United States v Reid, 12 USCMA 497, 31 CMR 83; United States v Coppitt, 17 CMR 672; United States v Emerson, 16 CMR 690, 694. In United States v Wright, 35 CMR 546, petition denied, 15 USCMA 679, 35 CMR 478, a unanimous board of review held inadequate a specification of attempt to rob which alleged an overt act but did not indicate the attempt was made in the presence of a person, an essential element of robbery.

No special forms of specification have been prescribed by Congress. The matter was left to the ▮▮▮▮▮▮ ▮ sound discretion of the President, as part of his responsibility under Article 36, Code, supra, 10 USC § 836, to determine appropriate rules of procedure. United States v Hobbs, 7 USCMA 693, 23 CMR 157, concurring opinion of Chief Judge Quinn and dissenting opinion of Judge Ferguson; United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Strand, 6 USCMA 297, 20 CMR 13. The President has prescribed certain short forms of specification. Manual for Courts-Martial, supra, Appendix 6c. These may properly be used, and are legally sufficient, if they satisfy the general requirement of law that a pleading apprise the accused of the precise offense with which he is charged, and contain sufficient allegations of fact to protect him against a second prosecution for the same misconduct.

Examination of the Manual forms of pleading indicates that the problem of charging an attempt has been approached in three different ways, depending upon whether the offense is charged under Article 80, which deals with attempts in general, or under a specific Article of the Code, which, in defining a particular offense, includes an attempt to commit that offense as a violation of the Article. In the latter instance, the model specification provides either for an allegation as to an overt act, or allegations which spell out the attempted offense with the same detail as the offense itself. For example, Article 100, Code, supra, 10 USC § 900, subjects to punishment any person who "compels or attempt to compel" surrender to the enemy; the model specification contains an allegation of an overt act.[4] Similarly, one who "aids, or attempts

---

[3] The statutory provision as to attempted robbery would appear, however, to require allegation of an overt act. Title 22, District of Columbia Code, 1961 edition, § 22–2902. Several forms of pleading dealing with attempts to evade taxes recommended by a standard text contain allegations of an overt act. Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, §§ 4532, 4535, 4536. On the other hand, several forms used by the United States Attorney for the District of Columbia do not refer to an overt act. Typical of these is the following: "On or about . . . . , within the District of Columbia, . . . did maliciously attempt to burn a certain premises known as . . . . , property of. . . ."

[4] The specification reads as follows: "In that . . . . . . . . did, (at) (on board) . . . . . . . ., on or about . . . . . . 19.., [ (compel) (attempt to compel) . . . . . ., the commander of . . . . . . . ., (to give it up to the enemy) (to abandon said . . . . . .), by . . . . . . ] [without proper authority, strike

**430**

to aid" the enemy violates Article 104, Code, supra, 10 USC § 904; the model specification for this offense also contains allegation of an overt act. Manual for Courts-Martial, supra, Appendix 6c, Form 60, at page 479. On the other hand, the model specification for attempted desertion specifies allegations to encompass the essential elements of desertion. *Id.,* Form 13, at page 474. The form of specification applicable to Article 80 is simpler than the other forms. This simplicity may merely result from the fact that the specification applies only to attempt, not both attempt and the completed offense. Whatever the reason for the difference, the model form is truly a "short form," which neither directly nor indirectly provides for allegation of an overt act purporting to constitute the attempt.

We have already indicated that a short form of specification to allege an offense is allowable procedure. Caldwell v State of Texas, 137 US 692, 34 L Ed 816, 11 S Ct 224 (1891); United States v Hobbs, supra. We have further noted that even an authorized short form must satisfy the two essentials of any criminal charge, namely, that the accused be informed of the nature of the offense so that he can prepare to meet the accusation, and that the allegations of the charge be sufficient to enable him to plead former acquittal or conviction if he should again be brought to trial for that crime. United States v Debrow, 346 US 374, 98 L Ed 92, 74 S Ct 113 (1953); United States v Sell, 3 USCMA 202, 11 CMR 202.

General allegations which express a legal conclusion, but which also convey factual information to ▇▇▇▇▇ ▇ identify the wrongful act, may properly be used as substitutes for purely factual averments for one or more of the essential elements of the offense. We have held, for example, that while the word "steal" has different meanings in regard to the intent with which property is wrongfully taken, it may properly be used in a model specification for larceny to indicate a taking with the intent to permanently deprive. United States v Rios, 4 USCMA 203, 207, 15 CMR 203.

Legally, and in common understanding, the word "attempt" contemplates an act designed to achieve, but falling short of achieving, an intended result. United States v Reid, supra, at page 504; Webster's Third New International Dictionary, at page 140. Identification of the object to be achieved by the attempt completes description of the act and the intent. Thus, to allege that A did attempt to rape B, a female, does not define all the details of A's misconduct, but it imports an act by A that came close to, but fell short of, effecting sexual intercourse with B without her consent. On its face, a charge of this kind appears calculated to inform the accused of what he must defend against and is sufficient to protect him against a second charge for the same misconduct. See United States v Hobbs, supra. A charge of attempt in this form is substantially similar to a charge that the accused aided and abetted another in the commission of an offense, without elaboration of the details of the conduct which constitutes the aiding and abetting. The latter form of pleading has been sustained by the Supreme Court of the United States. Coffin v United States, 156 US 432, 39 L Ed 481, 15 S Ct 394 (1895).

Where there is no statutory description of the attempted offense, greater particularization than that contained in the short form for pleading an attempt may perhaps be required. See United States v French, 10 USCMA 171, 27 CMR 245. In this case, Article 83, Code, supra, 10 USC ▇▇▇▇▇ ▇ § 883, defines fraudulent separation from the service, and the specification in issue refers to the attempted offense in the same language. In addition, the specification employs the language of Ar-

---

the (colors) (flag) to the enemy]." [Manual for Courts-Martial, United States, 1951, Appendix 6c, Form 52, at pages 478–479.]

ticle 80, which prescribes punishment for one "who attempts to commit any offense punishable" by the Uniform Code. Allegations utilizing the language of pertinent statutes defining the offense are generally sufficient. Mims v United States, 332 F2d 944 (CA 10th Cir) (1964), certiorari denied, 379 US 888, 13 L Ed 2d 92, 85 S Ct 158 (1964); cf. Russell v United States, 369 US 749, 8 L Ed 2d 240, 82 S Ct 1038 (1962). If "more particularity" is deemed desirable by the accused, he can obtain the details by appropriate preliminary motion or through inquiry in the Article 32 investigation if such be held. United States v Reid, supra, at page 502.

A Government exhibit is the subject of two assignments of error. First, appellate defense counsel challenge the admissibility of the exhibit; secondly, they contend the law officer committed prejudicial error by failing to instruct the court members to disregard an inference of misconduct that could be drawn from the exhibit.

To prove the attempted fraudulent separation from the service, trial counsel introduced evidence to indicate the accused's original date of separation from the service was August 20, 1967; this date, however, was put forward to make up for a period of time during which the accused was confined under sentence by summary court-martial. During July and early August, the accused had conferred with Gendreau at Division Finance in regard to the date of separation. He was informed his records reflected "stockade time," which was "bad time" and which required that the separation date be "pushed back" to September 12, 1967. At their last meeting, the accused made the offer of $50.00 to Gendreau to "fix . . . up" his leave record so that he could be separated in August. When Gendreau rejected the offer, the accused indicated he would "try to sneak by Transfer Point," whose clearance was required for separation. In accordance with local practice, he hand carried his records from Gendreau's office to Transfer Point. Later examination of his records disclosed that a line had been drawn through the "bad time" entry in his records and alongside the line was inserted a stamped letter "G." This stamp was the facsimile stamp customarily used by the Chief of the Military Pay Division of Division Finance and three specially-authorized noncommissioned officers in his office. The change in the record had not been authorized. While the form of correction was not that normally used for the kind of entry involved, personnel at the Transfer Point would have accepted the correction as indicating the accused's expiration of service was August 20, 1967.

Authority to delete the "bad time" entry required certain documentation. No such documentation appeared in the accused's file; instead, several other entries supported the "bad time" entry as it appeared when Gendreau informed the accused his separation date had been "pushed back" to September. The challenged exhibit was included in the accused's file. It is a "Corrected Copy" of a summary court-martial order vacating suspension of the period of confinement imposed upon the accused in a previous summary court-martial. The order directed execution of the unexecuted portion of the sentence to thirty days confinement. The authority line of the order and its authentication are as follows:

"BY ORDER OF LIEUTENANT COLONEL MANITSAS:

[signed] James W. Braddock
JAMES W. BRADDOCK
2nd lt., CE
Adjutant."

Defense counsel objected to the admission in evidence of the exhibit. He gave the following reasons: The order was a "Corrected Copy" and there was no evidence of the original; the document bore the facsimile, instead of the original, signature of the adjutant; the exhibit was "immaterial" because other evidence established the accused had twenty-three days bad time; and, finally, the exhibit was "of no materiality at all." The

objection was overruled, and the exhibit was admitted in evidence with specific instructions by the law officer to the court members to consider it "only for the limited purpose of substantiating an entry or lack of an entry, depending upon the court's interpretation, on DA Form 481." The court members were also instructed that any inference of misconduct that might be drawn from the document could not be considered by them, and they were not to infer the accused had "an evil disposition or criminal propensity and that he therefore committed the offenses alleged." In our opinion, the ruling was correct.

A "corrected copy" of an official document is itself an original, and it may be admitted in evidence without preliminary proof of the content of the superseded order. See AR 310–10, paragraph 12, May 20, 1964, amended by change 9, May 23, 1968; United States v Takafuji, 8 USCMA 623, 25 CMR 127. In other words, a "corrected copy" is not a copy in the sense of merely representing an original, and, it is not, therefore, subject to the best evidence rule. Manual for Courts-Martial, supra, paragraph 143a. There is, therefore, no merit in this aspect of the objection.

As to the authenticating signature, the form of authentication comports with service regulations on the subject. AR 310–10, supra, paragraph 10, at page 9. Also, the Manual for Courts-Martial provides that a document, "including relevant signatures," made by a "duplicating process is considered to be a duplicate original." Id., paragraph 143a, at pages 257–258. The exhibit was reproduced by mimeograph process, which brings it literally within the Manual provision. United States v Bennett, 4 USCMA 309, 312, 15 CMR 309. Thus, this aspect of the objection is also invalid.

The argument of immateriality is answerable from two points of view. First, if the exhibit was as cumulative as envisaged by defense counsel, its admission in evidence was not prejudicial to the accused, especially in light of the instructions limiting the consideration which the court members could give it. United States v Wimberley, 16 USCMA 3, 12, 36 CMR 159. Alternatively, the exhibit was not entirely cumulative. It clarified testimony by Gendreau as to the meaning of certain symbols used in other records in the accused's file which purported to indicate he had been in the stockade. It also tended to verify the length of the period of confinement. The exhibit, therefore, was material to the issues and not wholly cumulative. None of the grounds stated by defense counsel, therefore, justified excluding the exhibit from evidence.

Earlier, we noted the law officer instructed the court members as to the limited purpose for which they could consider the exhibit. In his final instructions on the merits, the law officer reminded the court members of his previous admonition and reiterated that the evidence had been introduced only to establish "the meaning of the entry" as to bad time. We are satisfied his instructions fully protected the accused against any adverse inference of misconduct that the court members might otherwise have drawn from vacation of the suspension of the summary court-martial sentence. Cf. United States v Kirby, 16 USCMA 517, 37 CMR 137.

No instruction to disregard evidence of uncharged misconduct was given to the court members before they retired to deliberate on the sentence. As a result, when the case was before the board of review, the Government conceded error and requested· that the board of review purge all possibility of prejudice by reassessment of the sentence. United States v Pendergrass, 17 USCMA 391, 38 CMR 189. The board of review reassessed the sentence by mitigating the dishonorable discharge to a bad-conduct discharge. We are convinced that, under the circumstances, the board of review's action was sufficient to cure the

433

instructional deficiency. United States v Peters, 8 USCMA 520, 25 CMR 24.

The decision of the board of review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree with my brothers' disposition of Charge I and its specification. I do not agree, however, that the specification of Charge II is sufficient to allege an offense.

In the case at bar, the accused was charged with violating Article 80 (attempts), Uniform Code of Military Justice, 10 USC § 880. The specification laid thereunder alleges, in pertinent part, that the accused "did . . . fraudulently attempt to procure himself to be separated from the United States Army." As the majority note, this is a short form of pleading an attempt to violate the substantive offense described in Article 83 of the Code, supra, 10 USC § 883. According to the principal opinion, short form pleading is sufficient if, thereby, the accused is informed of the nature of the offense so that he can prepare to meet the accusation and able to plead former acquittal or conviction if he should again be brought to trial for that crime. In any event, they hold that if more particularity is deemed desirable by the accused, he can obtain the details by appropriate preliminary motion or through inquiry in the Article 32 investigation, if such be held.

Article 83 of the Code does more than *define* the offense of fraudulent separation from the service, as my brothers state. It also specifically denominates the manner in which the offense may be committed; that is, it prohibits one from procuring his "separation from the armed forces by *knowingly false representation or deliberate concealment as to his eligibility for that separation.*" (Emphasis supplied.) The sample specification for this offense (Appendix 6c, Manual for

**434**

Courts-Martial, United States, 1951, page 473), prescribed by the President as part of his responsibility under Article 36, Code, supra, 10 USC § 836, follows the wording of the Code with reference to false representations and *provides that when alleging this offense "the fact or facts material to eligibility for separation which were represented" as contrasted with "the true fact or facts"* are to be set forth. (Emphasis supplied.) I am certain that we would not hesitate to hold a specification laid under Article 83 insufficient if it alleged no more than that an accused fraudulently secured his separation from the armed forces and did not include a recitation of the factual matter upon which the charge was based. These facts are the elements which go to make up the offense, and without them the specification is fatally defective. United States v Petree, 8 USCMA 9, 23 CMR 233; United States v Fleig, 16 USCMA 444, 37 CMR 64. See also United States v Reid, 12 USCMA 497, 31 CMR 83; United States v Fout, 3 USCMA 565, 13 CMR 121; United States v Sell, 3 USCMA 202, 11 CMR 202. How can it then be said that a specification alleging an *attempt* to commit a violation of this Article is sufficient when it does no more than plead a legal conclusion and does not convey any factual information to identify the alleged wrongful act?

The majority makes note of the fact that the sample specification under Article 80 is simpler than other forms and cites United States v Hobbs, 7 USCMA 693, 23 CMR 157, for support in contending that this Court has held, as an allowable procedure, a short form of specification to allege an offense. But we have also held that the fact that the specification follows a form laid down in the Manual, supra, does not establish its legal sufficiency. United States v Strand, 6 USCMA 297, 20 CMR 13. As the Chief Judge there declared, at page 301:

"Merely completing the blanks in a particular form of specification set out in the Manual for Courts-Martial, United States, 1951, does

not guarantee a legally unassailable charge. *The specification must set out every essential element of the offense, either directly or by necessary implication.* United States v Fout, 3 USCMA 565, 13 CMR 121." [Emphasis supplied.]

See also United States v Fleig, supra.

I dissented in United States v Hobbs, supra, because, as I there stated, at page 703:

". . . Modern pleading theory . . . requires that indictments set forth facts rather than mere legal conclusions."

This view is in accord with Rule 7(c), Federal Rules of Criminal Procedure, Title 18, United States Code Annotated, which states that:

"The indictment or the information shall be a plain, concise and definite written statement of the *essential facts* constituting the offense charged." [Emphasis supplied.]

We deal here, specifically, with a statute, Article 80, Code, supra, which proscribes "An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense." It is settled law that in order for an indictment to be valid it must allege all of the elements which are necessary to constitute a violation of the statute. Rudin v United States, 254 F2d 45 (CA 6th Cir) (1958). However, as stated in Babb v United States, 218 F 2d 538, 539 (CA 5th Cir) (1955):

"An indictment or information in the language of a statute ordinarily is sufficient, *except where the words of the statute do not contain all of the essential elements of the offense; but if the statute omits an essential element, the indictment must supply it with certainty."* [Emphasis supplied.]

And in Mims v United States, 332 F2d 944, 946 (CA 10th Cir) (1964):

"An indictment which is cast in the language of the statute is legally sufficient if, and only if, it states with requisite clarity the essential facts of the offense charged. See: Meer v United States (10 CA), 235 F2d 65; Cefalu v United States (10 CA), 234 F2d 522; and Madsen v United States (10 CA), 165 F2d 507."

For additional citations of authority, see Rule 7(c), Federal Rules of Criminal Procedure, Note 23, Statutory language, adherence to, Title 18, United States Code Annotated.

This accused was charged with "fraudulently" attempting to procure himself to be separated from the United States Army. While "[w]ords of criminality may color some equivocal allegations," they cannot, in themselves, "serve to supply an otherwise missing element of the offense. See United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Bender, 4 CMR 750; and Manual for Courts-Martial, supra, paragraph 28." United States v Fleig, supra, at page 445. All that the specification in this case sets forth is one word of criminality—fraudulently. That, simply, is not enough.

Accordingly, I would hold the specification of Charge II legally defective, order the charge dismissed, and return it to the board of review for reassessment of the remaining finding of guilty.