UNITED STATES, Appellee

v

RONALD B. CHASLES, Airman Second Class, and
JOSEPHUS S. WALKER, Airman First Class,
U. S. Air Force, Appellants

9 USCMA 424, 26 CMR 204

No. 10,966

Decided July 3, 1958

*Lieutenant Colonel Robert O. Rollman* argued the cause for Appellants, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Lieutenant Colonel John F. Hannigan* argued the cause for Appellee, United States. With him on the brief. was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

HOMER FERGUSON, Judge:

At a common trial by general court-martial convened at RAF Station Wethersfield, Essex, England, each accused was convicted—in spite of pleas to the contrary—of conspiring with the other to violate a regulation promulgated by Headquarters United States Air Forces in Europe, pertaining to post exchange activities, and of violating the same regulation, in contravention of Articles 81 and 92, Uniform Code of Military Justice, 10 USC §§ 881 and 892, respectively. The adjudged sentence as to each accused was reduced by the convening authority but otherwise approved and the findings and sentences subsequently approved by a board of review.

We granted review to consider two issues. The first is whether the specifications alleging violations of the USAFE regulation state offenses cognizable under Article 92 of the Code, supra, or are merely solicitations punishable as violations of Article 134 of the Code, 10 USC § 934. The second issue seeks to test the correctness of the law officer's instruction relating to "constructive knowledge."

I

The specifications framed under Article 92 of the Code, supra, alleged that the accused had violated "a lawful general regulation, to wit: Paragraph 15g, United States Air Forces in Europe Regulation number 176–5 dated 20 September 1955, by influencing Brenda Holmes, an Air Forces Europe Exchange employee, for the purpose of wrongfully obtaining cigarettes from Air Forces Europe Exchange in quantities greater than his authorized ration."[1] The accused contend that the pertinent provision of the regulation allegedly violated does no more than prohibit the mere solicitation to engage in unlawful activities and, as such, is punishable only as a simple disorder carrying a maximum punishment of confinement at hard labor for four months and forfeitures of two-thirds pay per month for a like period. The Government, on the other hand, choosing to rely upon "the basic reason for the regulation as well as the vice sought to be prevented" urges that the offense is properly punishable as a violation of Article 92, supra. We believe the Government's position is. the sounder of the two.

The United States was one of the original signatories to the North Atlantic Treaty Organization Status of

---

[1] Paragraph 15 of the Regulation allegedly violated is entitled "Prohibited Activities" and section "g" specifically forbids the following activity:

"g. To tip, bribe or otherwise influence AFEX, Class VI or MPS employees for the purpose of wrongfully obtaining goods or services, or assisting exchange employees or others not authorized exchange privileges to secure AFEX merchandise for their own use or for the use of other unauthorized persons."

Forces Agreement which had for its main purpose "to define the legal status of the civilian organs and international military headquarters of the North Atlantic Treaty Organization and of the military forces and their civilian components of one NATO power stationed in the territory of another."[2] Article II of the Agreement declares that it shall be the duty of a force and its civilian component "to respect the law of the receiving State, and to abstain from any activity inconsistent with the spirit of the present Agreement, . . . It is also the duty of the sending State to take necessary measures to that end." In a statement before the Senate Committee on Foreign Relations, which considered the Agreement, the Honorable Walter Bedell Smith, then Under Secretary of State, in discussing the provisions designed to safeguard the economy of host countries, said:

"The agreement sets forth a number of procedures designed to safeguard the economy of the country receiving foreign forces from the impact of uncontrolled local purchasing and similar operations. *You all know the cogent need for that.*"[3] [Emphasis supplied.]

Article XII of the Agreement, which relates to customs activities, provides as follows:

"1. The customs or fiscal authorities of the receiving State may, as a condition of the grant of any customs or fiscal exemption or concession provided for in this Agreement, require such conditions to be observed as they may deem necessary to prevent abuse.

"2. These authorities may refuse any exemption provided for by this Agreement in respect of the importation into the receiving State of articles grown, produced or manufactured in that State which have been exported therefrom without payment of, or upon repayment of, taxes or duties which would have been chargeable but for such exportation. Goods removed from a customs warehouse shall be deemed to be imported if they were regarded as having been exported by reason of being deposited in the warehouse."

Pursuant to this provision, the United States has entered into various implementing bilateral agreements which permitted the free importation of American cigarettes into the receiving States. The prohibited activities denounced by paragraph 15 of the regulation were designed to prevent offenses against the customs and fiscal laws of the host States.[4] In view of the general policies sought to be established by the Agreement and the specific vices intended to be prevented by the regulation, we have little doubt that the prohibited activities denounced in paragraph 15g are properly punishable as violations of Article 92.

The accused lay great stress upon the case of United States v Oakley, 7 USCMA 733, 23 CMR 197, as support for their contention that only a mere solicitation punishable as a simple disorder was involved. In *Oakley*, the accused was found guilty of a specification which alleged that he had wrongfully solicited another to procure rat poison to be used to poison a named Sergeant. The evidence showed that the accused had requested two civilian kitchen employees to purchase rat poison in order to poison his first sergeant by putting the poison in his food. We held that under those circumstances the specification alleged no more than a simple disorder punishable under Article 134, supra. Our holding in *Oakley*, supra, however, is inapposite to the facts in the present case. Here, the accused were charged with "influencing" an Air Force Exchange employee for the purpose of obtaining cigarettes

---

[2] Senate Executive Report No. 1, 83d Congress, 1st Session.
[3] Hearings before the Senate Committee on Foreign Relations, 83d Congress, 1st Session, on the Status of the North Atlantic Treaty Organization, Armed Forces, and Military Headquarters, page 6.
[4] The United States, as a signatory to the basic Agreement, expressed its willingness in Article XIII "to prevent offences against customs and fiscal laws and regulations."

in amounts greater than that to which they were entitled. The prosecution proved that Holmes, the exchange employee, had allowed the accused—pursuant to their request—to purchase three or four cartons of cigarettes with one ration stamp when the authorized ration was one carton per stamp. In time, the operation was greatly expanded and the accused were purchasing as many as thirty cartons of cigarettes with one ration stamp. For her services in this matter, Holmes was paid a commission of four shillings per carton. These cigarettes were later sold on the black market to British nationals in two English towns. The evidence further showed that during the year 1956 this scheme had resulted in the sale of over 1,000 cartons of cigarettes in which a profit in excess of $1,200.00 was realized. It is clear from these facts that the conduct of the accused went beyond mere solicitation, and constituted the separate and distinct substantive offense similar to bribery.[5] See Article 134, Uniform Code of Military Justice, supra. Cf. United States v Wysong, 9 USCMA 249, 26 CMR 29; United States v Brown, 8 USCMA 255, 24 CMR 65.

## II

The remaining issue relating to the law officer's instruction on "constructive knowledge" of ▋ USAFE Regulations need not detain us. In United States v Stone, 9 USCMA 191, 25 CMR 453, we held that knowledge of regulations of a "major command" need not be affirmatively shown but may be presumed. Accord, United States v Statham, 9 USCMA 200, 25 CMR 462. The United States Air Forces in Europe is such a major command "within the purview of those cases." United States v Silva, 9 USCMA 420, 26 CMR 200. Accordingly, the instructional error could not have prejudiced the accused. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.

---

[5] The offense of which the accused was convicted was also similar to that denounced in the United States Code, Title 18, § 201.