UNITED STATES, Appellee

v

MATTHEW L. WILEY, Platoon Sergeant,
U. S. Army, Appellant

16 USCMA 449, 37 CMR 69

*Captain Thomas R. Spradlin* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker,* and *Captain Frank J. Martin, Jr.*

*First Lieutenant Joel P. Schiff* argued the cause for Appellee, United States. With him on the brief were *Colonel Peter S. Wondolowski, Colonel Joseph J. Crimmins, Lieutenant Colonel Francis M. Cooper,* and *Captain Stephen G. Weiss.*

## Opinion of the Court

FERGUSON, Judge:

Convicted of three specifications of unlawfully abusing his official position in soliciting and accepting funds from basic trainees for his personal use, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, the accused petitioned this Court for relief from the board of review's affirmance of his conviction. We granted review upon the issues whether:

A. THE LAW OFFICER ERRED TO THE SUBSTANTIAL PREJUDICE OF THE AC-CUSED IN FAILING TO INSTRUCT THE COURT, SUA SPONTE, ON ACCOMPLICE TESTIMONY.

B. THE OFFENSES CHARGED INVOLVE GRAFT OR A MERE DISORDER.

C. THE OFFENSES ARE DUPLICITOUS.

D. THE LAW OFFICER ERRED IN HIS INSTRUCTIONS TO THE COURT-MARTIAL AS TO BASING CONVICTION ON SOLICITA-TION OR ACCEPTANCE OF FUNDS FROM TRAINEES.

### I

The accused, a platoon sergeant, was placed in charge of a platoon of new trainees at Fort Gordon, Georgia. On October 7, 1965, he instructed Private Carter, a trainee platoon guide, to collect $1.50 from each man for the purchase of barracks supplies. Carter did so, gathering approximately one hundred dollars and turning it over to the accused. Some time later, platoon members received marking pencils, masking tape, paint, and paint brushes. There is evidence indicating these items were actually furnished by the Government.

On October 16, 1965, accused asked the platoon if it desired to visit the post exchange. An affirmative response brought from him the observation that he hated to see them go there and drink beer when he was without funds to do so. In his presence, Private Carter, a platoon guide, took up a collection amounting to approximately $9.00. When someone commented on the large number of quarters which had been collected, accused replied, " 'well, I drink lots of booze.' " Some of the contributors were under the impression a donation was necessary in order to go to the exchange. One present simply testified, "We thought it better to pay, go ahead and pay, just not ask any questions and expect any answers."

On November 10, 1965, the accused approached a trainee squad leader, indicated he was in difficulties, and needed funds. Other platoon guides were notified. A collection in excess of $190.00 was made from the trainees and turned over to the accused on the following morning.

Accused, testifying on the merits, denied the allegations against him. As to the initial collection, he asserted that no marking supplies were available for the trainees' equipment. He asked Carter to seek purely voluntary contributions in any amount from the trainees in order to obtain them. Carter turned over to him approximately $19.00 to $21.00. This was

spent on supplies which were distributed to the men.

As to the post exchange incident, accused declared he merely cautioned the trainees against becoming intoxicated. He was not present during any collection, nor did he receive the proceeds thereof.

As to the final collection, accused testified it was in no way initiated by him. He first learned of it when the money was presented to him as a token of the men's esteem in connection with his wife's illness. The sum amounted to about $100.00, and he gave it to his wife.

## II

It is first urged upon us that the trainees who actually collected the "contributions" were accused's accomplices in his alleged misconduct. Hence, appellate defense counsel claim it was the law officer's duty, *sua sponte*, to instruct the members of the court-martial as to the effect of their participation in Wiley's activities upon their credibility. His failure to do so, it is said, was prejudicial.

The evidence does not bear out the defense contention. True, this Court has afforded a broad definition to the term "accomplice" in connection with the need to caution a court-martial as to such an individual's credibility. United States v Bey, 4 USCMA 665, 16 CMR 239; United States v Lell, 16 USCMA 161, 36 CMR 317. Thus, in United States v Scoles, 14 USCMA 14, 33 CMR 226, we said at page 18:

"There is no universally accepted definition of the term 'accomplice.' The courts have accorded to it meanings extending from all persons who participate in the commission of a crime to an associate who knowingly and voluntarily cooperates, aids, or assists in its commission. See, generally, 14 Am Jur, Criminal Law, § 109."

And in United States v Bey, supra, relying on Egan v United States, 287 Fed 958 (CA DC Cir) (1923), we pointed out that, generally speaking, accomplices were criminal participants in the same endeavor. Finally, in United States v Lell, supra, we reaffirmed these statements and described them as having "held that 'a witness is an accomplice if he was culpably involved in the crime with which accused was charged.'" *Lell*, supra, at page 163.

Applied to the evidence before us, it is patent the witnesses here involved were not accused's accomplices in the alleged graft. Though referred to as platoon guides and squad leaders, they themselves were trainees subject to Wiley's authority. They did no more than act as conduits through which his rank and position was brought to bear in making the collections. Indeed, it appears they themselves contributed. The monies obtained did not redound in any way to their benefit but, on each occasion, to that of the accused. In short, rather than being his accomplices, on these facts, it clearly appears they also were his victims.

Finally, lest it be said the foregoing conclusions are based solely upon the prosecution's case, it should be also noted there is nothing in the defense presentation which is at all at odds with them. Accused's position at the trial essentially was that he had committed no crime. As to the first collection, he declared it was a purely voluntary means of obtaining needed supplies, which were used for a military purpose. Cf. United States v Satey, 16 USCMA 100, 36 CMR 256. He denied any knowledge of the second collection, and, as to the third, stated it had occurred spontaneously without his participation. Thus, the accused's position at the trial is completely at odds with the contention here that the collectors were his accomplices—"'culpably involved in the crime with which accused was charged.'" United States v Lell, supra, at page 163.

We have noted many times the law officer's duty to tailor instructions to the issues presented and submit to the fact finders the theories of the respective parties at trial. United States v Smith, 13 USCMA 471, 33 CMR 3;

**451**

United States v Sheeks, 16 USCMA 430, 37 CMR 50. Here, he did just that. In light of the accused's denial of guilt and connection with the last two collections, it may well have been harmful to his cause to have referred to the witnesses as his accomplices. Their characterization as such was not within his theory of defense, and would have conflicted therewith. This consideration also leads us to conclude there was no error here in failing to instruct on the credibility of accomplices. United States v Lell, supra; United States v Winborn, 14 USCMA 277, 34 CMR 57; Starks v United States, 316 F2d 45, 47 (CA 9th Cir) (1963).

### III

The second issue involves whether the charges allege graft, in violation of Code, supra, Article 134, and punishable by dishonorable discharge, total forfeitures, and confinement at hard labor for three years, or simple disorders, in violation of the same Article, but far less penalized.

Typical of the multiple counts is the following specification:

"In that Platoon Sergeant (E–7) Matthew L. Wiley, U. S. Army, being at the time Platoon Sergeant, 1st Platoon, Company C, 16th Training Battalion, 2d Training Brigade, United States Army Training Center, Fort Gordon, Georgia, did, at Fort Gordon, Georgia, on or about 7 October 1965, wrongfully and unlawfully abuse his official position by asking Private Harold L. Carter, a trainee platoon guide, to solicit $1.50, for barracks supplies, from each trainee in the 1st Platoon of Company C, 16th Training Battalion, 2d Training Brigade, and the said, Sergeant Matthew L. Wiley, did, on or about the same date, wrongfully and unlawfully accept about $100.00, solicited at his request and in his behalf from Private Harold L. Carter, for the personal use of the said Sergeant Matthew L. Wiley."

It will be seen, therefore, that the count alleges, in substance, accused, occupying an official position in the military training hierarchy, ■ abused that position by soliciting and accepting funds from trainees in his unit and under his authority for his personal use. Such misconduct transcends a mere disorder and constitutes graft.

In United States v Alexander, 3 USCMA 346, 12 CMR 102, we were confronted with allegations the accused, a vehicle driver, by virtue of his official position, accepted funds from another member of the armed forces in return for providing Government transportation to an unauthorized person. A majority of the Court equated such misconduct to graft and adopted as its definition, " 'Advantage or personal gain received because of peculiar position or superior influence of one holding position of trust and confidence without rendering compensatory services, or dishonest transaction in relation to public or official acts, and sometime implies theft, corruption, dishonesty, fraud, or swindle, and always want of integrity.' " *Id.* at page 349. Chief Judge Quinn, concurring in part and dissenting in part, was unable to find, on the facts shown, that Alexander occupied any official position, but agreed "The gravamen of graft is the extraction of private gain from another while holding a peculiar position of superiority, influence, or trust." *Id.* at page 350.

Hence, without conceding the validity of the ultimate holding on the facts presented in *Alexander*, supra, it appears clear this Court long ago unanimously settled upon the definition and punishment of graft in the armed services. Applying that standard to the allegations before us, it is apparent accused's conduct is punishable as such and not as a mere disorder. Thus, it is shown by the count and in the proof that he occupied an official, superior position as the noncommissioned officer in charge of a group of trainees and that he abused that position by using it to solicit and accept funds from those under his control. In short, he used his Government office corruptly for personal gain.

United States v Alexander; United States v Bey, both supra. As such, his conduct was punishable in each instance as graft, in violation of Code, supra, Article 134, and not as a mere disorder. United States v Chasles, 9 USCMA 424, 26 CMR 204.

## IV

The third question we must resolve is whether the specifications are duplicitous, in that each, as ▮ set out above, alleges both the solicitation *and* acceptance of funds by the accused through his official position. We conclude they are not, each count merely setting forth the same violation in two different manners.

The misconduct here charged is very similar to that formerly denounced by Title 18, United States Code, § 202, now included in 18 USC § 201, which provided:

"Whoever, being an officer or employee of, or person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof, . . . asks, accepts, or receives any money, . . . with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both; and shall forfeit his office or place and be disqualified from holding any office of honor, trust, or profit under the United States."

Indictments under this Code section commonly charged both the solicitation and acceptance of money in single counts. Downs v United States, 3 F2d 855 (CA 3d Cir) (1925), certiorari denied, 268 US 689, 69 L ed 1158, 45 S Ct 509; McGrath v United States, 275 Fed 294 (CA 2d Cir) (1921); United States v Canella, 63 F Supp 377 (SD Cal) (1945), affirmed *sub nom.*

Canella v United States, 157 F2d 470 (CA 9th Cir) (1946). Thus, in Egan v United States, supra, it was stated, at page 962:

"It is contended that, being separate offenses, they cannot be included in a single count of the indictment. We are not impressed by this contention. Nor do we think it is supported by the decision in the Burton Case. While in that case the offenses were charged in separate counts, there is no intimation that they may not be embraced in a single count. We think it is optional with the pleader to embrace the distinct offenses in separate counts or in a single count. The objection of duplicity to the first and second counts of the indictment was properly overruled."

See also Sneierson v United States, 264 Fed 268 (CA 4th Cir) (1920).

In like manner, we conclude it is entirely permissible to allege the solicitation and receipt of graft in a single count, and such pleading is not subject to objection on the grounds of duplicity.

## V

The final issue involves an inquiry into the propriety of the law officer's instructions to the court as follows:

"You are further advised that the offense of abuse of official position by soliciting and accepting money from trainees for the personal use of the accused is closely related to the offenses of bribery and graft. In this respect you are advised that the offense can be committed either [by] solicitation or by acceptance of money for the personal use of the accused, provided the other elements of the offense are present. Therefore, in order to find the accused guilty of Specification 2 of the Charge it is not necessary for you to find that he both solicited and accepted money for his personal use. *If you are satisfied beyond a reasonable doubt that he solicited money for his personal use but he did not accept the money, or that he accepted the money for his personal use with-*

**453**

*out soliciting it, then you may nevertheless reach a finding of guilty of Specification 2 of the Charge, but in this event it will be necessary for you to modify the findings so it will reflect a finding as to which you have no reasonable doubt."* [Emphasis supplied.]

An identical instruction was given as to specification 3, alleging the same sort of misconduct. It is urged the advice is erroneous, in that it fails to inform the court members they are to vote separately on the alternative bases thus set forth for a finding of guilty. Hence, it is contended that some members may have voted accused guilty on the basis of soliciting the collection of the funds, while others may have predicated guilt on the basis of acceptance of the funds. In consequence, accused's guilt, it is said, may not have been founded upon the necessary concurrence of two-thirds of the members present and voting. See United States v Aloyian, 16 USCMA 333, 36 CMR 489, and my separate opinions in United States v Means, 12 USCMA 290, 30 CMR 290, and United States v Leach, 7 USCMA 388, 22 CMR 178.

Indeed, in United States v Aloyian, supra, at page 337, the Court noted that the possibility of such action by court members "may justify a clarifying instruction at the appropriate place in the trial," a proposition to which all may wholeheartedly subscribe. But that is precisely what the law officer did here. Had he concluded his advice with the notation accused might be found guilty on the basis of either solicitation or acceptance of the funds from the trainees, the proposition pressed upon us might be meritorious. He immediately added, however, that "in this event it will be necessary for you to modify the findings so it will reflect a finding as to which you have no reasonable doubt."

The law officer's instructions are in accordance with military legal procedure which reaches findings on the basis of ballots of guilty, not guilty, or guilty, excepting certain portions of the specification. Manual for Courts-Martial, United States, 1951, paragraph 74*b*. The court members were precisely informed that, should they desire to predicate guilt on one or the other forms of graft alleged in the specifications, it would be necessary to except from the counts the alternative as to which they were not convinced, so their finding would reflect only that as to which they had no reasonable doubt. See United States v Hopf, 1 USCMA 584, 5 CMR 12; United States v Tubbs, 1 USCMA 588, 5 CMR 16; and United States v Nedeau, 7 USCMA 718, 23 CMR 182. As there were no such exceptions, it is obvious, as announced by the president, that two-thirds of the members concurred in finding accused guilty of the specification as drafted, *i.e.*, of both the solicitation and acceptance of the funds. We find no instructional infirmity here which might have misled the court into reaching a nonmajority verdict.

In sum, then, we find no error in the law officer's instructions; in his failure, *sua sponte,* to characterize accused's hapless subordinates as accomplices; in the nature of the allegations against him; or, finally, in their treatment as graft, in violation of Code, supra, Article 134. The accused stands fairly and validly convicted and sentenced for misuse of the authority reposed in him to victimize helpless recruits subject to his control. Under our system of law, he can demand no more.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.