UNITED STATES, Appellee,

v.

Specialist Five Charles T. ECKERT II,
SSN 293–50–4959, United States
Army, Appellant.

SPCM 13867.

U. S. Army Court of Military Review.

19 Feb. 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Grifton E. Carden, JAGC, and Captain Dennis E. Brower, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Captain Harry J. Gruchala, JAGC, and Captain Robert D. Higginbotham, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and GARN, Appellate Military Judges.

OPINION OF THE COURT

GARN, Judge:

Specialist Eckert was convicted, in accordance with his pleas of guilty, of a specification properly alleging the willful and unlawful destruction of a public record, a specification construed by the military judge as alleging attempted graft, and two

specifications construed by the military judge as alleging graft. He was sentenced by the members of a court-martial to be discharged from the service with a bad-conduct discharge and to be reduced to the grade of E–1.

Specialist Eckert was the chief legal clerk for a battalion. On two occasions he agreed to destroy records of proceedings under Article 15, 10 U.S.C.A. § 815, Uniform Code of Military Justice (UCMJ), pertaining to another soldier, for remuneration, rather than, as was his duty as chief legal clerk, insure that those records were placed in appropriate official files.

The apparent attempt to charge the appellant with attempted graft was alleged as follows:

In that Specialist Five Charles T. Eckert II, U. S. Army, Headquarters and Headquarters Battery, 1st Battalion, 41st Field Artillery, did at Schwaebisch Gmuend, Germany on or about 6 November 1978, attempt to wrongfully and unlawfully ask from Shawn L. McQuery, a U. S. soldier, the value of about $150.00 as compensation for services to be rendered by him, said Specialist Five Charles T. Eckert II, in relation to an official matter in which the United States was and is interested, to wit: The maintenance and handling of the Original and copies of DA Form 2627, (Record of Proceedings Under Article 15, UCMJ, 10 U.S.C.A. § 815), in contravention of Army Regulations in order to prevent their insertion into Shawn L. McQuery's official files, the property of the United States Army. Said offense occuring (sic) on a United States military kaserne out side (sic) the territorial limits of the United States.

With variations not relevant to the issue of what offenses, if any, were alleged, the wording and punctuation of the two specifications by which apparent attempts were made to allege graft were identical to the quoted specification.

■ The military judge, obviously believing attempted graft and graft had been alleged, advised the appellant that an essential element of each of the three alleged offenses was that at the time of the offenses the appellant occupied an official position, or had duties, as the chief legal clerk of a battalion. Unfortunately, none of the specifications alleged, expressly or by clear implication, that the appellant occupied that position or had those duties. Moreover, the specifications failed to allege that the appellant occupied any position, or had any duties, relating to any service he was to render. Accordingly, neither attempted graft nor graft was alleged in any of the specifications. *United States v. Eslow*, 1 M.J. 620 (A.C.M.R.1975); *United States v. Williams*, 23 C.M.R. 868 (A.F.B.R. 1957); *United States v. Hoke*, 21 C.M.R. 681 (A.F.B.R.1956); *see also United States v. Wiley*, 16 U.S.C.M.A. 449, 37 C.M.R. 69 (1966); *United States v. Bey*, 4 U.S.C.M.A. 665, 16 C.M.R. 239 (1955); *United States v. Alexander*, 3 U.S.C.M.A. 346, 12 C.M.R. 102 (1953).

The specifications at issue obviously are not paradigms of proper grammar. Diagramming them would be a challenge. Nevertheless, the specifications can fairly be construed to contain allegations that the appellant attempted to ask for, asked for, and accepted remuneration from another soldier in return for the appellant's agreement to prevent records of proceedings under Article 15, U.C.M.J., 10 U.S.C.A. § 815, pertaining to that soldier, from being placed in that soldier's official files as required by Army regulations. Such conduct, in our view, is directly harmful to good order and discipline in the armed forces and punishable, at least, as a disorder. *See United States v. Hoke, supra; United States v. Williams, supra. Cf. United States v. Wiley, United States v. Bey* and *United States v. Alexander*, all *supra*. Because misconduct proscribed by the Uniform Code of Military Justice was alleged and admitted by the appellant, we will affirm those findings of guilty.

■ The appellant argues before us that the military judge abandoned his impartial role and became an advocate for the Government, thereby depriving the appellant of a fair hearing on the sentence.

The evidence shows that the appellant was a very hard working, proficient legal clerk. With the obvious exception of his criminal conduct, his performance could be characterized as outstanding. Before calling witnesses to testify to that effect, the appellant's trial defense counsel unsuccessfully sought a ruling that would limit the trial counsel's cross-examination to the appellant's duty performance. Defense counsel assiduously avoided asking witnesses to express their amorphous, argumentative, subjective desires and opinions concerning possible future professional relationships with the appellant and the appellant's potential future value as a member of the military. Despite defense objection, the trial counsel was permitted to delve into those matters on cross-examination. The first witness was agreeable to the prosecution's cause. She stated she would not want the appellant to serve as her legal clerk, nor would she recommend that he serve in that capacity, because the appellant had betrayed the trust reposed in him. When the subject was raised on cross-examination of the second defense witness, the trial counsel was not so successful. That witness stated that, because of the appellant's outstanding performance, he probably would be willing to "employ," and believed he would trust, the appellant in a legal clerk's position. After the military judge elicited a description of the appellant's duties, the following occurred:

Q. So he was at the heart of the military justice system of the Brigade?

A. That's right.

Q. Would you consider the accurate processing of legal documents to be vital in the performance of military missions?

A. Yes.

Q. If someone subverts that system, do you think that is relevant and important to this court?

A. Certainly.

Q. Nonetheless, the system having been subverted, you would still like the accused back to duty?

A. I believe so, based on everything I know about him and based on what I've seen in 10 months, yes. Obviously the crimes alleged here are serious crimes; I'm not saying that. I'm saying over-all, I think he did a good job.

Q. Had the accused not done a good job, do you think he would have been in a position to subvert the system?

A. That I can't answer, Your Honor. I don't know.

Q. In other words, people in a fiduciary relationship are there because they did a good job. Are they not?

A. Yes, although I'm having a hard time understanding that question. A bad clerk would [not] have been in the job, if that's what you are saying. If you are saying he was in a position of trust, I would have to say, yes he was.

MJ: Do counsel having questions based on mine?

TC: No, Your Honor.

DC: No, Your Honor. The defense would simply note an objection to the last two questions by the military judge as leaving the impartial role of military judge and becoming an advocate for the Government.

The military judge merely acknowledged that the objection would be included in the record. Then, in response to a court member's question, the witness finally, in effect, stated he probably would not want the appellant to serve as his legal clerk.

It appears to us, and probably appeared to the court members, that the military judge felt that the witness was not sufficiently considering the appellant's "subversion" of the military justice system in arriving at his views concerning the appellant's potential future value as a legal clerk. The effect of the quoted colloquy was a successful subversion of the witness' opinion which, for what it was worth, had tended to favor the appellant.

838

While the military judge may, and sometimes should, clarify ambiguities, he may not, of course, become an advocate. *United States v. Shackleford*, 2 M.J. 17 (C.M.A.1976); *United States v. Clower*, 23 U.S.C.M.A. 15, 48 C.M.R. 307 (1974); *United States v. Wilson*, 2 M.J. 548 (A.C.M.R.1976). In a case very similar to this case, this Court ordered a rehearing on the sentence. *United States v. Massa*, 49 C.M.R. 586 (A.C.M.R.1974). While distinctions between *Massa* and this case can be made, those distinctions are not sufficiently significant to warrant a different result, especially in view of an additional matter affecting the fairness of the appellant's trial.

A written stipulation of fact entered into by the parties, and provided to the members of the court-martial, included the following paragraph:

> Several months before, another person reported to LTC Lauzon, ¼1st Commander that the accused attempted to get money in return for his destroying the Article 15. LTC Lauzon, because he believed the accused when he denied the allegation, did not take any action.

When fundamental rules of evidence are applied, it is apparent that the information contained in that paragraph is either incompetent hearsay, or legally and logically irrelevant. However, because neither counsel nor the military judge alluded to that paragraph, the members of the court-martial were left free to draw their own conclusions from it. The unguided members of the court-martial may have concluded that the appellant had not only previously engaged in the same sort of misconduct for which he was being tried and sentenced, but additionally had lied to his battalion commander who, because of the appellant's position of trust, believed the appellant's false denial. The members never should have been permitted to consider the incompetent hearsay. *United States v. Zone*, 7 M.J. 21 (C.M.A.1979). The risk of prejudice to the appellant is obvious.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge MITCHELL concurs.

DRIBBEN, Judge, dissenting:

I do not find that the military judge's efforts to make clear a witness' position on an issue relating to appellant's return to duty turned him into a partisan advocate for the Government. I do agree with the majority that there are distinctions between the actions of the military judge in this case and those of the military judge in *United States v. Massa*, 49 C.M.R. 586 (A.C.M.R. 1974). The distinctions are so great that there was no error in this instance. What error there may have been in appellant's *agreement* to the stipulation of fact was of little or no impact considering the sentence he received.

I would affirm the sentence as well as the findings of guilty.